T.C. Memo. 2018-117

UNITED STATES TAX COURT

ESTELLE C. GRAINGER, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27817-16.                    Filed July 30, 2018.

Estelle C. Grainger, pro se.

<u>Nancy M. Gilmore</u> and <u>Elizabeth M. Shaner</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  With respect to petitioner's Federal income tax for 2012,

the Internal Revenue Service (IRS or respondent) determined a deficiency of

$4,985 and a late-filing addition to tax of $142 under section 6651(a)(1).[1]  After

_____

[1]All statutory references are to the Internal Revenue Code in effect during

(continued...)

**[*2]** concessions, the issue remaining for decision is whether petitioner is entitled

to a noncash charitable contribution deduction of $34,401, as opposed to the

deduction of $6,117 that the IRS allowed.[2]  We resolve this question in

respondent's favor.

## FINDINGS OF FACT

The parties filed a stipulation of facts with accompanying exhibits that is in-

corporated by this reference.  Petitioner resided in Maryland when she petitioned

this Court.

Petitioner is a retired grandmother who is fond of shopping.  Seeking to

combine her love of shopping with a desire for a tax cut, she developed in 2010

what she described at trial as her "personal tax shelter."  Having learned that a

taxpayer may generally claim a charitable contribution deduction in an amount

equal to the fair market value (FMV) of donated property, she assumed that the

FMV of a retail item is the dollar amount shown on the price tag when the retailer

---

[1](...continued)
the year in issue, and all Rule references are to the Tax Court Rules of Practice and
Procedure.  We round all monetary amounts to the nearest dollar.

[2]Petitioner stipulated that the IRS correctly disallowed $180 of the $250
cash charitable contribution deduction she claimed for 2012.  Petitioner also stipu-
lated that she filed her 2012 return late, and she did not challenge in her petition or
at trial the IRS' determination of a late-filing addition to tax of $142.  We accord-
ingly deem her to have conceded that issue.

[*3] first offers the item for sale. Petitioner thus saw an opportunity: If she could find items that had been heavily discounted from the amounts shown on their original price tags, she could achieve a net tax benefit simply by buying and immediately donating those items.

Virtually all of the property for which petitioner claimed charitable contribution deductions consisted of clothing she had purchased at Talbots. She would look for clothing that had been heavily discounted (e.g., out-of-season items) and purchase dozens or hundreds of these items over the course of a year. As a valued customer, she would thus become entitled to Talbots "points" or "appreciation dividends," which she could then deploy to get further discounts. As a result of successive markdowns and use of "points," petitioner might purchase for $10 an item that had an original retail price of $99. She would donate that item to Goodwill Industries (Goodwill) and claim a charitable contribution deduction of $99 on her Federal income tax return.

Petitioner initiated her personal tax shelter in 2010, when she reported noncash charitable contributions of $18,288. That figure grew to $32,672 in 2011 and to $34,401 in 2012, the tax year in issue.[3] For 2012 she filed a delinquent Form

---

[3]Petitioner became even more ambitious in 2013 and 2014, reporting noncash charitable contributions of $40,351 and $46,978, respectively.

**[*4]** 1040, U.S. Individual Income Tax Return, on April 14, 2014. On Schedule A, Itemized Deductions, she reported noncash charitable contributions of $34,401, corresponding to the original retail prices of discounted items she had purchased at Talbots. She acquired these items by making an outlay of $6,047, i.e., $2,520 in cash and $3,527 in loyalty points.

Petitioner attached to her return six Forms 8283, Noncash Charitable Contributions. She described her donations as "dresses," "jackets," and other items of clothing, and she listed the donees as various Goodwill donation centers. She described her valuation method as "FMV," by which we assume she meant "fair market value." None of the Forms 8283 was executed by a Goodwill official, as the forms explicitly require.

The IRS selected petitioner's 2012 return for examination. On October 21, 2015, while the examination was pending, petitioner filed for bankruptcy under chapter 13 of the Bankruptcy Code. The U.S. Bankruptcy Court for the District of Maryland converted her case to a chapter 7 proceeding, and she received a chapter 7 discharge on August 2, 2016.

The IRS resumed its examination after the bankruptcy case closed. Concluding that petitioner had not used a qualified method to establish the FMV of the donated items, the examination team reduced her allowable deduction to $2,520,

[*5] her actual cash outlay. Petitioner filed a protest with the IRS Appeals Office, which increased her allowable deduction to $6,117, chiefly by revising her cost basis upward to include the "points" as well as the cash she had used to acquire the items.[4] On November 17, 2016, the IRS issued petitioner a timely notice of deficiency setting forth this adjustment and the late-filing addition to tax. She timely petitioned this Court for redetermination.

The case was tried on October 30, 2017. One week later respondent moved to amend his pleadings, contending that he had erred in letting petitioner include $3,527 of loyalty points in her cost basis and urging that her allowable charitable contribution deduction should be decreased accordingly. Respondent also sought to assert an accuracy-related penalty. We denied respondent's motion, concluding that it was untimely and would prejudice petitioner.

In December 2017 we learned that petitioner had moved the bankruptcy court to reopen her case to determine whether her 2012 Federal income tax liability--the subject of this case--had been discharged. On April 5, 2018, the parties filed a joint status report informing the Court that the bankruptcy judge had answered that question in the negative.

---

[4]The record does not explain the $70 difference between the noncash charitable contribution deduction allowed in the notice of deficiency ($6,117) and the sum of petitioner's cash outlay and points ($2,520 + $3,527 = $6,047).

**[*6]**                                             OPINION

I.     Burden of Proof

The IRS' determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner does not contend (and could not plausibly contend) that she has satisfied the requirements of section 7491 for shifting the burden of proof. See Rule 142(a). Accordingly, the burden of proof remains on her on all factual issues.

II.    Analysis

Section 170 allows as a deduction any contribution made within the taxable year to a charitable organization. Sec. 170(a)(1), (c). Such deductions are allowable only if the taxpayer satisfies statutory and regulatory substantiation requirements. See sec. 170(a)(1); sec. 1.170A-13, Income Tax Regs. The nature of the required substantiation depends on the size of the contribution and on whether it is a gift of cash or property.

For all contributions of property (other than money), the taxpayer must maintain reliable written records that include the name and address of the donee, the date and location of the contribution, and a description of the property "in detail reasonable under the circumstances." Sec. 1.170A-13(b)(2)(ii)(A) through

**[*7]** (C), Income Tax Regs. The taxpayer must also maintain records to establish "the fair market value of the property at the time the contribution was made" and "the method utilized in determining the fair market value." Id. subdiv. (ii)(D).

For all contributions valued at $250 or more, the taxpayer must obtain a "contemporaneous written acknowledgment" (CWA) from the donee. Sec. 170(f)(8). The CWA must include (among other things) a description of any property other than cash contributed. Id. subpara. (B)(i). In the absence of a CWA meeting the statute's requirements, "[n]o deduction shall be allowed." Id. subpara. (A); cf. id. subpara. (D) (granting the IRS rulemaking authority to excuse failures to comply with the CWA requirements).

Additional substantiation requirements are imposed for contributions of property with a claimed value exceeding $500. Sec. 170(f)(11)(B). Still more rigorous substantiation requirements are imposed for contributions of property with a claimed value exceeding $5,000. Id. subpara. (C). In determining whether donations of property exceed these thresholds, "similar items of property" (other than cash and publicly traded securities) must be aggregated. See id. subpara. (F). The term "similar items of property" is defined to mean "property of the same generic category or type," such as clothing or toys. Sec. 1.170A-13(c)(7)(iii), Income Tax Regs.

**[\*8]** If property or similar items of property are valued in excess of $5,000, the taxpayer must substantiate the value of the property with a "qualified appraisal of such property." Sec. 170(f)(11)(C). She must also attach to her return a fully completed "appraisal summary" on Form 8283. See Costello v. Commissioner, T.C. Memo. 2015-87, 109 T.C.M. (CCH) 1441, 1445; sec. 1.170A-13(c)(2)(i)(B), Income Tax Regs.

To substantiate her contributions petitioner produced receipts from Talbots, marked-down price tags of purchased items, and receipts from Goodwill. On each of the latter receipts, a Goodwill employee had marked the date and location of the donation, the general types of items donated (e.g., clothing), and his signature. Petitioner also supplied a spreadsheet she had prepared, which we found to lack any evidentiary value.

Petitioner has fallen far short of substantiating noncash charitable contributions in excess of the amount respondent has allowed as a deduction. Because all of petitioner's donations were of similar items of property (i.e., clothing), they must be grouped together for purposes of determining whether the $5,000 substantiation threshold has been reached. See sec. 1.170A-13(c)(7)(iii), Income Tax Regs. Petitioner claimed that the value of this clothing was $34,401, but she did not obtain a qualified appraisal. See sec. 170(f)(11)(C); Costello, 109 T.C.M.

**[\*9]** (CCH) at 1445. Although petitioner attached several Forms 8283 to her return, they were not executed by an official of the donee organization, as Form 8283 explicitly requires. Petitioner likewise failed to secure a valid CWA as required by section 170(f)(8)(B). The receipts from Goodwill merely state that she donated clothing; they do not indicate what specific items of clothing she donated or the number of items she donated on any particular visit.

Even if petitioner had satisfied the substantiation requirements discussed above, we would still sustain respondent's disallowance because she failed to employ a legitimate methodology to determine the FMV of the donated clothing. "The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs.; see also United States v. Cartwright, 411 U.S. 546, 551 (1973) ("The willing buyer-willing seller test of fair market value is nearly as old as the federal income, estate, and gifts taxes themselves[.]").

Contrary to petitioner's view, the FMV of an item is not the price at which a hopeful retailer initially lists that item for sale. By the time petitioner purchased her clothing, Talbots had marked down the prices of those items three or four times. She purchased each item for a small fraction of its original list price. No

[*10] rational buyer having knowledge of the relevant facts would have paid for these items a price higher than the price Talbots was then charging. Petitioner has failed to establish for the donated items an FMV higher than her acquisition cost.[5]

In sum, petitioner has failed to prove that she is entitled to a deduction for noncash charitable contributions in excess of the amount respondent has allowed. To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[5]Even if petitioner could establish that the FMV of the donated clothing exceeded her acquisition cost, she would have no right to a greater charitable contribution deduction. Section 170(e)(1)(A) reduces the allowable deduction by "the amount of gain which would not have been long-term capital gain * * * if the property contributed had been sold by the taxpayer at its fair market value (determined at the time of such contribution)." <u>See</u> sec. 1222(1), (3). Since petitioner donated all or most of the items shortly after purchasing them, she would have realized short-term capital gain if she had sold them instead.